# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine Lavelle and Gary Lavelle, : 
her husband, : No. 1303 C.D. 2015
: Submitted: May 11, 2016
Appellants :
:
v. :
:
Borough of Dunmore Zoning Hearing :
Board and Maria Wharton :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE WOJCIK                                                    FILED:  September 16, 2016


Christine Lavelle and Gary Lavelle, her husband, (collectively, Objectors) appeal the order of the Lackawanna County Court of Common Pleas (trial court) denying their land use appeal of a decision of the Borough of Dunmore (Borough) Zoning Hearing Board (Board) that granted the application of Maria Wharton (Landowner), a neighboring landowner, to construct a two-story addition to her residence on a concrete building pad and footer on her property.  We affirm.

Objectors are the owners of property located at 211 Oak Street in the Borough of Dunmore, Lackawanna County. Landowner owns the property located at 209 Oak Street, which is adjacent to the Objectors' property. Both properties are located in an R-1B (Single Family Medium Density Residential) zoning district. Landowner's property had originally consisted of a home with an attached store built in 1907.[1] Landowner demolished the one-story nonconforming store structure in 1999, intending to construct a two-story garage in the same location. As a result in 1999 she constructed a new concrete building pad and footer at the site, which cost approximately $15,000.00. However, a number of personal and

---

[1] Section 11.201 of the Borough's Ordinance defines "structure," in relevant part, as "[a]nything constructed or erected, the use of which requires location on the ground or attachment to something have a fixed location on the ground. Among other things, structures include buildings, mobile homes, swimming pools, carports, walls, fences and billboards." In turn, Section 11.174 defines "nonconforming structure," in pertinent part, as "[a] structure or part of a structure manifestly not designed to comply with the applicable use or extent of use provisions . . . where such structure lawfully existed prior to the enact of such ordinance or amendment . . . ." Likewise, Section 107 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10107, defines "nonconforming structure" as "a structure or part of a structure manifestly not designed to comply with the applicable use or extent of use provisions in a zoning ordinance . . . where such structure lawfully existed prior to the enactment of such ordinance . . . ."

In contrast, Section 11.175 of the Ordinance defines "nonconforming use," in material part, as "[a] use, whether of land or structure, which does not comply with the applicable use provisions . . . or any amendment . . . where such use was lawfully in existence prior to the enactment of such ordinance or amendment . . . ." Section 107 of the MPC also defines "nonconforming use" as "a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance . . . where such use was lawfully in existence prior to the enactment of such ordinance . . . ."

financial circumstances prevented Landowner from constructing the garage at that time. Reproduced Record (R.R.) at 63a.[2]

In April 2014, Landowner filed an application with the Board to construct a two-story addition to her existing home, consisting of a garage on the first floor and two bedrooms and a bathroom on the second floor. It is undisputed that this addition is a permitted use in an R-1B zoning district. Landowner sought a variance relating to the side-yard setbacks because Section 4.111(e) of the Borough's Ordinance states that in any R-District, "an appurtenant use accessory to an adjacent principal permitted use may be constructed on any vacant nonconforming lot," but "[n]o building shall be erected closer to an adjacent principal building than ten (10) feet, nor shall any side yard be less than seven (7) feet." *See also* Article 3, Table 2 Development Standards for Residential Zones setting a 10-foot minimum setback for one side yard in the R-1B District; a 25-foot minimum setback for both side yards; and a 35-foot maximum building height.

The Board conducted a public hearing in May 2014, during which Landowner's son, Thomas, testified as to his mother's plans for the addition. He stated that the proposed addition would only be four and a half feet from Objectors' property and only two feet, three inches from the property line. He noted that the store that had existed on the property until 1999 was a single story building and submitted a picture to the Board. He explained that the new concrete pad and footer on which he and his mother currently use to park their vehicles was constructed following the demolition of the store, and he submitted pictures of the

_____

[2] Objectors did not number the reproduced record in accordance with Pa. R.A.P. 2173, which requires a lowercase "a" to follow the numeric number on the page. Instead, Objectors used a format consisting of an uppercase "R," followed by a lower case "a" and the page number. For purposes of clarity, we will refer to the pages in the proper format.

existing pad and footer. R.R. at 1a-15a, 43a-40a. He stated that the "concrete pad was put right on the same foundation that's there." *Id.* at 8a.

Christine Lavelle also testified at the hearing, alleging that there would only be four feet, two inches between the two properties if the proposed addition was constructed. She expressed concerns over safety and the proximity of her home should a fire occur in the proposed addition, as well as concerns over property values with such a close neighboring structure. To address these concerns, Landowner's son proposed to use fire-rated sheetrock on the addition and agreed that he would not install any windows facing Objectors' home. At the conclusion of the hearing, the Board voted unanimously to grant Landowner the requested variance. R.R. at 15a-31a.

In June 2014, the Board issued a written decision in which it treated Landowner's application for a dimensional variance for the new, proposed permitted use of an addition to the existing home as an application to continue the prior nonconforming use on the property. Citing Sections 7.230(a),[3] 4.111(e), and

---

[3] Section 7.230 of the Borough's Ordinance states:

> a. A nonconforming use or structure shall not be changed into a use which is permitted in a less restrictive district than the district where the nonconforming use is first permitted.
>
> b. A nonconforming use may be changed into a conforming use.
>
> c. A nonconforming use which is not permitted in any district or which is permitted only as a special exception or a conditional use may only be changed into a conforming use.

4

8.210 of the Borough's Ordinance,[4] the Board evaluated the building of the garage addition as a vertical expansion of the prior, nonconforming structure.

---

[4] Section 8.210(a) sets forth the criteria necessary for the grant of a variance:

> The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant . . . . The board may grant a variance, provided that all of the following findings are made where relevant in a given case:
>
> (1)  That there are unique physical circumstances or conditions, including . . . exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2)  That because of such physical circumstances or conditions, there is not possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of this property.
>
> (3)  That such unnecessary hardship has not been created by the applicant.
>
> (4)  That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (5)  That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

The Board found as fact that "Article 3 Table No. 2 provides for a side yard setback of ten feet in the R-1B District and Section 4.111(e) noted a varied standard for certain nonconforming lots of a lesser degree, as well as, Section 4.310.[5]" Board 6/11/14 Decision at 4. The Board also found:

> Article 7 of the Ordinance provides for continuation of nonconforming uses ([Section] 7.100[6]) and termination of same ([Section] 7.300[7]). The Board finds the uses of the premises for the addition as a one family [use] legally exist on the premises. The addition is to be built on the footer and concrete pad, no new footers were testified as needed, and the new addition would not encroach into the setback any further than the existing footer and pad originally constructed for the addition. The proposed construction complies with [Section 7.230(b).[8]]

---

[5] Section 4.310 relates to the regulation of side yards and Section 4.311 states, in relevant part, that the side yard width may be varied under enumerated circumstances not relevant to the instant matter.

[6] Section 7.100 states, in relevant part, that "[a] use, building or structure lawfully in existence prior to the adoption of this Ordinance, which does not comply with the applicable use provisions of this Ordinance or any applicable amendment thereto may be continued except as otherwise provided in this Article."

[7] Section 7.300 states, in pertinent part, that "[t]he discontinuance of a nonconforming use for a period of five (5) years and/or the change of use to a . . . conforming use for any period of time shall be considered an abandonment and such nonconforming use shall not thereafter be revived." *See also* Section 11.175a ("A legally existing nonconforming use shall be considered to be abandoned when the use has been terminated . . . unless the operator of such a use provides adequate evidence to demonstrate that there was only a temporary closing and there was a clear intent to subsequently reopen the use.").

[8] Section 7.200 states that "[n]o existing building or premises devoted to a nonconforming use shall be . . . reconstructed [or] substituted . . . except when changed to a conforming use . . . ." As noted above, Section 7.230(b) states that "[a] nonconforming use may be changed into a conforming use." Moreover, Section 7.250 states, in pertinent part:

> A nonconforming use or structure may be expanded up to twenty-five (25%) percent of its floor area and/or lot area as it exists at the time of the adoption of this Ordinance . . . . [S]uch use shall not be

**(Footnote continued on next page…)**

*Id.* at 4-5.

The Board further explained that "[f]rom the pictures offered at hearing the neighborhood is comprised of structures that do not reflect the current side yard setbacks for principle structures," and that "[t]he existing homes . . . illustrate a mature neighborhood and construction that occurred prior to the adoption of the zoning ordinance." *Id.* at 3.

Additionally, the Board stated:

> The [Board] found in part, the request of Landowner is governed by [*In re Yocum*, 141 A.2d 601 (Pa. 1958)] and *Nettleton* [*v. Zoning Hearing Board of Adjustment of the City of Pittsburgh*, 828 A.2d 1033 (Pa. 2003)]. Because both the prior one story structure and the existing concrete pad with footer, built at the time of the demolition on [Landowner's] property constitute structures under the [Borough] Zoning Ordinance, and the Zoning Ordinance allows for the proposed two story vertical addition other than to limit building height to 35 feet, the Board finds [Landowner] has a right to continue the vertical construction to the height of 35 feet for the proposed addition which will be built upon the existing footer and concrete pad.

Board 6/11/14 Decision at 3.[9]

---

**(continued…)**

> permitted to expand except in accordance with all of the building regulations herein. Such enlargement must conform to all other regulations of the District where it is situated. This provision may be used only once for each zone lot.

[9] The Board also quoted our opinion in *West Central Germantown Neighbors v. Zoning Board of Adjustment of the City of Philadelphia*, 827 A.2d 1283, 1287 (Pa. Cmwlth. 2003), *appeal denied*, 844 A.2d 555 (Pa. 2004), outlining the requirements for the grant of a variance:

> To obtain relief in the nature of a variance as applied to a pre-existing non-conforming use, an applicant must establish four

**(Footnote continued on next page…)**

7

Based on the foregoing, the Board concluded:

The approval for the relief requested stems from the evidence that the structure will continue to function within the uses legally permitted [] in the Ordinance. Further[, the] Board finds that there [] are sufficient grounds for allowing the continuation of the use and to the extent necessary expanding the use vertically within the boundaries of the footer and pad already constructed for the addition under *Larsen* [*v. Zoning Board of Adjustment*, 672 A.2d 286 (Pa. 1996)]. The Board finds there is no detrimental effect on property values in the area if the relief was granted. The [Board] also relies, in part, upon [*Nettleton*] in support of its position that [Landowner] is permitted to continue to build the two story addition as originally undertaken by [Landowner]. The nonconforming use is to be allowed to continue in the vertical dimension so long as it does not violate the height restriction of 35 feet for the R-1B district as set forth in Article 3 Table No. [2[10]] and Section 4.210.

---

**(continued…)**

factors: (1) that an unnecessary hardship exists which is not created by the applicant and which is caused by unique physical circumstances of the property for which the variance is sought; (2) that a variance is needed to enable the party's reasonable use of the property; (3) that the variance will not alter the essential character of the district or neighborhood, or substantially or permanently impair the use or development of the adjacent property such that it is detrimental to the public's welfare; and (4) that the variance will afford the least intrusive solution. *Larsen v. Zoning Board of Adjustment*, [672 A.2d 286 (Pa. 1996)].

[10] Objectors argue that the Board incorrectly applied the height restriction in Article 3 Table No. 3 rather than the height restriction applicable to the R-1B Zoning District in Article 3 Table 2. However, the Board's reference to the former appears to be a typographical error in light of its prior correct citation to the latter. Moreover, the applicable maximum building height restrict under either table is 35 feet and it is not alleged that the proposed addition will violate this restriction.

8

Board 6/11/14 Decision at 5. Finally, the Board determined that Landowner presented evidence supporting the grant of a variance in Section 8.210 of the Ordinance which warranted approval of Landowner's application to construct the addition. *Id.* at 6. On appeal, in which Landowner intervened, the trial court affirmed the Board's decision without taking additional evidence, and Objectors filed the instant appeal.[11]

Objectors first claim that the Board abused its discretion or erred as a matter of law in determining that Landowner met her burden of proving that the proposed addition is a preexisting nonconforming use or structure that had not been abandoned. We disagree.

In granting the instant application, the Board relied upon our Supreme Court's decisions in *Yocum* and *Nettleton*. In *Yocum*, a zoning ordinance was enacted after the landowners had built their house. While the house use conformed

---

[11] As this Court has explained:

> In zoning appeals, as here, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. A conclusion that the zoning hearing board abused its discretion may be reached only if the zoning hearing board's findings are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Money v. Zoning Hearing Board of Haverford Township*, 755 A.2d 732, 735 n.3 (Pa. Cmwlth. 2000) (citations omitted). "Assuming the record demonstrates the existence of substantial evidence, the Court is bound by the Board's findings which are the result of resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence." *Vanguard Cellular System, Inc. v. Zoning Hearing Board of Smithfield Township*, 568 A.2d 703, 707 (Pa. Cmwlth. 1989), *appeal denied*, 590 A.2d 760 (Pa. 1990). "The Board, as fact finder, has the power to reject even uncontradicted testimony if the Board finds the testimony to be lacking in credibility." *Id.*

9

to those permitted by the ordinance, the front and side boundaries of the house were within the ordinance setbacks. The landowners sought a building permit to extend the second floor of the house over the first floor front porch. It was undisputed that the addition would not increase the encroachment into either the front or side yard setbacks. The building inspector and the board denied the permit request, but the trial court reversed and directed that it be issued.

On further appeal, the Supreme Court affirmed, explaining:

> The record fails to disclose any provision of the zoning ordinance which prescribes a maximum height for buildings in the use district which a vertical or upward extension of the building would violate. That the proposed reconstruction would deprive adjoining property owners of light and air, or both, is more fanciful than real. . . . The allowance of this building permit is neither the grant of a 'variance' nor an 'exception' nor an extension of the use of these premises. It is rather the grant of a logical, reasonable and natural structural change in the building which neither increases any nonconformity of its use nor violates any provision of the zoning ordinance and in no wise affects the general welfare of the neighborhood or of the adjoining property owners.

*Yocum*, 141 A.2d at 605-6.

In *Nettleton*, the landowners owned a commercial one-story building that occupied virtually its entire lot in violation of yard and setback requirements applicable to new construction in the zoning district. However, because the building predated the zoning regulations and was lawful when constructed, it was permitted to continue as a protected nonconforming use. The zoning administrator subsequently granted the landowners a building and occupancy permit to expand the existing building vertically to three stories. Neighboring objectors appealed to the zoning board, arguing that a variance was required to permit the addition and

that if approved, it would have the detrimental effect on the neighborhood and their properties of depriving them of air and sunlight. Following a hearing, the board upheld the grant of the permit and the trial court affirmed, but this Court reversed on appeal.

On further appeal, the Supreme Court quoted a zoning ordinance provision stating:

> A nonconforming structure may be enlarged, expanded or extended, in compliance with all applicable regulations of this Code, unless the enlargement, expansion or extension has the effect of increasing the degree of nonconformity or making a use or structure nonconforming in any other respect.

*Nettleton*, 828 A.2d at 1036.

In considering the application of the foregoing ordinance provision, the Court explained:

> [A] basis for our decision in [*Yocum*] was the conclusion that the proposed construction would not further violate the yard or setback regulations which, by their terms, controlled only the horizontal limits of construction; that is, the permitted outer bounds of the building's footprint. Since the proposed vertical construction in [*Yocum*] had no effect on the horizontal limits of the pre-existing construction or the outer bounds of the existing building's footprint, this Court concluded that no increase in the existing nonconformity was thereby created.
>
> The same considerations govern the analysis in this case. The vertical addition here proposed would have no effect on the existing building's footprint and, therefore, would not increase the encroachment of the building within the required front or side yard setback. Since the proposal would not have the effect of increasing the degree of nonconformity, the zoning

11

authorities correctly determined that the addition was permitted by right pursuant to [the ordinance].

*Id.* at 1039.

As noted above, Section 7.200 of the Borough's Ordinance states that "[n]o existing building or premises devoted to a nonconforming use shall be . . . reconstructed[12] [or] substituted . . . except when changed to a conforming use . . .

---

[12] The Ordinance does not define "reconstructed" or "substituted." As this Court has explained:

> Although the Statutory Construction Act, 1 Pa. C.S. §§1501–1991, does not apply expressly to zoning and subdivision ordinances, the principles contained in that act are followed in construing a local ordinance. Words and phrases of local ordinances shall be construed according to the rules of grammar and according to their common and approved usage. Zoning ordinances should be construed in a sensible manner. In interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning, and any doubt must be resolved in favor of the landowner and the least restrictive use of the land.
>
> * * *
>
> In construing the relevant provisions of [a] zoning ordinance, we generally use dictionaries as source material to determine the common and approved usage of a term.

*Kissell v. Ferguson Township Zoning Hearing Board*, 729 A.2d 194, 197 (Pa. Cmwlth. 1999) (citations omitted). Webster's Third New International Dictionary, in relevant part, defines "reconstruct" as "to construct again" and "to build again : REBUILD," and "substitute" as "to put in the place of another : EXCHANGE." Webster's Third New International Dictionary 1897, 2280 (1986). *Compare* Section 11.202 of the Ordinance (defining "structural change" as "[a]ny change in the structural members of a building, such as walls, beams, columns or girders."). Thus, as stated *infra*, Sections 7.200 and 7.230(b) expressly permit the complete reconstruction or substitution of the prior horizontally nonconforming structure with the new equally horizontally nonconforming structure for the proposed permitted use.

and" Section 7.230(b) states that "[a] nonconforming use may be changed into a conforming use." Additionally, it is undisputed that the uses associated with Landowner's proposed two-story addition are permitted within the R-1B Zoning District. As a result, the Ordinance specifically permits Landowner to replace the prior dimensionally nonconforming store structure with the new dimensionally nonconforming two-story addition because the new use is a permitted use.[13]

Nevertheless, Objectors assert that Landowner's demolition of the dimensionally nonconforming store structure and its replacement with the equally dimensionally nonconforming concrete pad and footer in 1999 constitutes an abandonment of both the nonconforming store use and the nonconforming store structure under Sections 7.300 and 11.175a of the Ordinance.[14] However, both of the foregoing Ordinance provisions relate to the abandonment of the

---

[13] *See, e.g., Zeiders v. Zoning Hearing Board of Adjustment of West Hanover Township*, 397 A.2d 20, 22 (Pa. Cmwlth. 1979) ("Here, the authorization [in the ordinance] to 'repair' or 'restore' nonconforming buildings is without qualification or condition. Giving these words their plain meaning, an owner of a nonconforming use is authorized by the ordinance to replace structural elements of a building no longer in good condition. Certainly those words would apply to the replacement of a wood slatted roof . . . . Further, the replacement of the wooden beams of the shade house expressly falls within the definition of 'structural alteration' in the ordinance.").

[14] As this Court has explained:

> The discontinuance of a use in excess of the time limitation set forth in the zoning ordinance . . . creates a presumption of an intent to abandon. However the party asserting the abandonment must also prove actual abandonment, which cannot be inferred from non-use alone. Abandonment may be determined from overt acts, a failure to act, or statements.

*Metzger v. Bensalem Township Zoning Hearing Board*, 645 A.2d 369, 370 (Pa. Cmwlth. 1994) (citations omitted).

nonconforming store use and not to the dimensionally nonconforming store structure.[15] It is undisputed that Landowner has abandoned the nonconforming store use, but Landowner's replacement of the dimensionally nonconforming store structure with the equally dimensionally nonconforming concrete pad and footer in 1999[16] constitutes a continuation of the nonconforming structure. Thus, even if it is assumed that the foregoing sections regarding the abandonment of the nonconforming store use apply, Landowner continued the structural nonconformity of the store structure through the construction of the dimensionally nonconforming concrete pad and did not abandon such for the requisite five-year time period provided in Section 7.300 of the Ordinance.

---

[15] As outlined above, Sections 11.174 and 11.175 of the Ordinance specifically distinguish between a "nonconforming structure" and a "nonconforming use." Additionally, as noted above, Section 11.201 defines "structure," in pertinent part, as "[a]nything constructed or erected, the use of which requires location on the ground or attachment to something have a fixed location on the ground." The foregoing definition supports the Board's determination that the installation of the instant concrete pad and footer constitutes a "structure," and a "nonconforming structure" due to its dimensional nonconformity, under the relevant provisions of the Ordinance. *See, e.g., HYK Construction Company v. Zoning Hearing Board of Perkiomen Township*, (Pa. Cmwlth., No. 1191 C.D. 2004, filed March 18, 2005), slip op. at 6 ("Applying that definition here, these slabs will be mixed and poured onto the ground and will become permanently attached thereto for the purpose of storing HYK's pre-cast concrete materials in conjunction with its business. Accordingly, the concrete slabs at issue in this case fell well within the definition of a 'structure' under the Zoning Ordinance.").

[16] Objectors also argue that Landowner presented testimony "that can be interpreted" that the footer was laid two feet beyond the original footprint of the demolished dimensionally nonconforming store structure. *See* Brief of Appellants at 13. However, the Board found as fact that "[t]he addition is to be built on the footer and concrete pad, no new footers were testified as needed, and the new addition would not encroach into the setback any further than the existing footer and pad originally constructed for the addition," and that Wharton testified that "[t]he addition would not exceed or encroach upon the setback area any greater than the removed building and the existing footer and pad." R.R. at 51a, 53a-54a. There is substantial evidence supporting the Board's findings in this regard, *see* R.R. at 8a-9a, 11a, 13a, and we will not accede to Objectors' request to reconsider or reweigh the evidence presented to the Board.

14

Moreover, Landowner's financial inability to complete the construction of the dimensionally nonconforming structure by adding the two-story addition rebuts a presumption of her intent to abandon the dimensionally nonconforming structure. *See, e.g., TKO Realty, LLC v. Zoning Hearing Board of the City of Scranton*, 78 A.3d 732, 736-37 (Pa. Cmwlth. 2013) ("Where discontinuance of a use occurs because of events beyond the owner's control, such as financial inability, there is no actual abandonment.") (citation omitted); *Joyce Outdoor Advertising, LLC v. Department of Transportation*, 49 A.3d 518, 525 (Pa. Cmwlth. 2012) ("In rebutting a presumption of abandonment, adverse financial circumstances may explain a period of non-use.").

In sum, because Landowner promptly built the foundation for the new addition and was delayed in completing the project due to personal and financial difficulties, there is no basis to find an abandonment of the dimensionally nonconforming store structure because it was continued through the construction of the dimensionally nonconforming concrete pad and footer. Because the construction of the two-story addition will not increase the dimensional nonconformity of the existing nonconforming structure, the Board did not err in granting Landowner's application. *Nettleton*; *Yocum*.[17]

---

[17] Although the Board also granted Landowner the superfluous relief of a variance, as outlined above, Landowner was entitled to "reconstruct" or "substitute" the dimensionally nonconforming store structure with the dimensionally nonconforming addition under the Ordinance because it was changing the use of the structure to a conforming use. As a result, we will not address the propriety of the Board's grant of the dimensional variance. *See, e.g., Zeiders*, 397 A.2d at 21 n.1 ("Since we find that Section C.1 [of the ordinance] provides appellants with the authority to rebuild the shade house, we need not consider whether the court's application of C.2 to the facts in this case was in error."). Moreover, it is settled that this Court may affirm on any basis appearing in the record. *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 973 n.12 (Pa. Cmwlth. 2015).

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christine Lavelle and Gary Lavelle, her husband, | : : : | No. 1303 C.D. 2015 |
| Appellants | : : : | |
| v. | : | |
| Borough of Dunmore Zoning Hearing Board and Maria Wharton | : : : | |

O R D E R

AND NOW, this 16<u>th</u> day of <u>September</u>, 2016, the order of the Lackawanna County Court of Common Pleas dated June 22, 2015, at No. 2014-CV-3903, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine Lavelle and Gary Lavelle,   :
her husband,   :
            Appellants   :
               :  No.  1303 C.D. 2015
        v.   :
               :  Submitted: May 11, 2016
Borough of Dunmore Zoning Hearing   :
Board and Maria Wharton   :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*

DISSENTING OPINION
BY JUDGE McCULLOUGH            FILED:  September 16, 2016

        The issue before us is a plain and simple request for a *horizontal* (not vertical) dimensional variance which should be denied for failing to meet the requisite criteria for the same. Prior to this matter, that criterion has been consistently applied in decades of precedent. Instead, the Majority, while thoughtfully written, relies on an ocean of red herrings to support its conclusion. Foremost among these are its reliance on a non-existent, non-conforming use, and non-conforming structure as the basis for the analysis, a purported claim of hardship, and two *vertical* expansion cases. Hence, I must respectfully dissent.

The essential facts in this case are not in dispute. Until 1999, the property of Maria Wharton (Landowner) contained two structures - a home and an attached, one-story store. The store was a non-conforming structure as it *encroached at least five feet* too far into the requisite side-yard setbacks between Landowner's property and a neighboring property owned by Christine and Gary Lavelle (Objectors). However, in 1999, Landowner *completely* removed the non-conforming structure, including the foundation, as confirmed by Landowner's son in his testimony before the Borough of Dunmore Zoning Hearing Board (Board). In response to a question from a member of the Board as to whether the existing concrete pad consisted of the foundation of the demolished store, Landowner's son responded "[n]o . . . that building was taken down. ***The foundation was taken down.*** In `99 we poured the new pad that was there. . . ." (Reproduced Record (R.R.) at 11a) (emphasis added).[1]

It is clear from the foregoing passage that Landowner not only demolished the one-story non-conforming store structure, she also, by removing its foundation, removed any vestige of it. It is also clear that in so doing, Landowner

---

[1] The majority opinion ignores this testimony. It references, however, a statement made by Landowner's son earlier in the proceedings before the Board that the "concrete pad was put right on the same foundation that's there." (R.R. at 8a.) Whatever was meant by that statement, the subsequent testimony noted above makes it clear that the non-conforming store, including its foundation, was completely removed by Landowner in 1999. Moreover, the Board notes that the proposed two-story addition to the existing residence would be built "on a footer and concrete pad which were constructed after the demolition of a one story structure occupying a portion of the property . . . undertaken to accommodate the proposed addition." (Board's Finding of Fact No. 4; R.R. at 53a.) Additionally, the trial court, in its June 22, 2015 decision, states that "a new foundation was constructed where the store foundation was previously located and a building pad was built. . . ." (R.R. at 63a.) Landowner does not contest this point either. Indeed, in addition to the testimony of Landowner's son noted above, Landowner's amended brief recites "[a] new foundation was constructed where the store foundation previously was located. . . ." (Amended Brief at 2.)

had no intention of preserving the non-conforming use attendant to said structure. On the contrary, Landowner intended only to construct an attached, two-story addition to her residence which is the subject of the variance request at issue.

Consequently, the fact that at one time there had been a non-conforming structure on Landowner's property is of no moment and is irrelevant to a determination regarding the requested variance. For purposes of properly evaluating the horizontal dimensional variance being sought by Landowner, said request must be viewed as any other request to build a residential addition that encroaches into a mandatory side-yard setback. In that regard, Landowner must satisfy the traditional requirements for a variance. There is simply no basis in the law or the facts of this case to hold otherwise. The Majority opinion, however, concludes otherwise, ignoring the variance requirements and compounding the errors made by both the Board and the trial court.

First, the Majority states that "the Ordinance specifically permits Landowner to replace the prior dimensionally non-conforming store structure with the new dimensionally non-conforming two-story addition because the new use is a permitted use." (Slip op. at 12.) This is simply incorrect and is a red herring. There are no provisions in the Ordinance that permit a non-conforming structure to be eliminated, as is the case here, and an entirely new structure erected, albeit one whose use is permitted, when that structure would be in violation of the Ordinance's side-yard setback requirements absent a dimensional variance.

Moreover, the proposed two-story addition is not "non-conforming" as the Majority states. A non-conforming structure is one which lawfully existed prior to the enactment of a zoning ordinance to which it would not comply. *See*

Section 11.174 of the Ordinance;[2] Section 107 of the Municipalities Planning Code (MPC).[3] These sections define the term "nonconforming structure" as a finite legal term wholly inapplicable to Landowner's proposed two-story addition, and so too is that portion of the addition that has already been constructed, i.e., the foundation and concrete pad.[4]

The Majority cites Sections 7.200 and 7.230(b) to support the assertion that the Ordinance "specifically permits" the addition, as well as the fact that the uses thereof are permitted. While the use may be permitted, Section 7.200 refers only to "an existing building . . . devoted to a nonconforming use." Here, there is no existing building; it was completely removed and the Ordinance provides no basis to thereafter construct a new structure in violation of the Ordinance's side-yard setback requirements.

The Majority correctly notes that "reconstruction" is not defined in the Ordinance. However, its attempt to bootstrap the definition of "structural change" in Section 11.202 is without merit. That definition presupposes the existence of a building and speaks to changes in the structural members thereof. Here, the building is gone. Indeed, the only reference in the Ordinance to permitting the

---

[2] As the Majority notes, Section 11.174 of the Ordinance defines "nonconforming structure," in pertinent part, as "[a] structure or part of a structure manifestly not designed to comply with the applicable use or extent of use provisions . . . where such structure lawfully existed prior to the enact of such ordinance or amendment. . . ." (Slip op. at 2.)

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10107. Section 107 defines "nonconforming structure" in the same manner as Section 11.174 of the Ordinance.

[4] There is nothing in the record to suggest that Landowner obtained a permit to demolish the former one-story structure or, for that matter, obtained a building permit, variance, or any other approval to construct the subject foundation and concrete pad. Without such approval, the foundation and concrete pad are in violation of the Ordinance.

reconstruction of a non-conforming use after removal is where the use has been "destroyed" by more than 50% of its floor area. *See* Section 7.240(c) of the Ordinance.

The Majority then asserts that while Landowner abandoned the non-conforming use, she did not abandon the non-conforming structure because she constructed an "equally dimensionally nonconforming concrete pad and footer" and thereby continued the structural nonconformity of the store structure and "did not abandon such for the requisite five-year time period provided in Section 7.300 of the Ordinance." (Slip op. at 13-14.) This reasoning is fundamentally at odds with itself. While the Majority notes the distinction between a non-conforming use and a non-conforming structure, it relies upon Section 7.300 of the Ordinance for its conclusion that the Landowner did not abandon the "structural nonconformity of the store structure" for the requisite five year time period. (Slip op. at 13.) Section 7.300 of the Ordinance, however, is titled "Termination of Nonconforming Uses," and the provisions thereof are expressly limited to the abandonment of a non-conforming use. It is therefore simply wrong to glom a non-conforming structure onto the provisions of Section 7.300 of the Ordinance and Landowner cannot avail herself thereof.

It is difficult to imagine a clearer example of the abandonment of a non-conforming structure than what occurred in this case. Landowner demolished the non-conforming structure and removed it, at all times intending to build a very different structure. Thus, nothing was carried over from the previous structure. Moreover, aside from intending to construct an entirely different structure, Landowner offered no other reasons for removing the non-conforming structure – most notably, Landowner did not claim that the non-conforming store structure was "damaged," which would have permitted Landowner to restore and reconstruct

PAM - 5

it pursuant to 7.210 of the Ordinance, or that said structure was sufficiently destroyed so as to compel its removal and permit reconstruction pursuant to Section 7.240(c) of the Ordinance. Sections 7.210 and 7.240 are the only bases prescribed by the Ordinance and neither is applicable in this instance.

Accordingly, there is nothing in the Ordinance to permit the removal of a non-conforming structure and construction of a subsequent structure with the same footprint on the basis of Landowner's preference, not occasioned by damage to, or destruction of, the non-conforming structure, when said footprint is beyond the bounds of the requisite side-yard setback requirements. The Majority also is bereft of any decisional authority to support this notion. Hence, the Majority's reliance on the former non-conforming structure to justify the new addition to the home on Landowner's property is misplaced. If Landowner is to be able to proceed with the addition, it must be by way of a variance. However, an examination of the record shows that Landowner has not met the requisites for such a variance.

Section 8.210(a) of the Ordinance sets forth the following necessary criteria for the grant of a variance:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

> (2) That because of such physical circumstances or conditions, <u>there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance</u> and that the authorization of a variance

is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, <u>will represent the minimum variance that will afford relief</u> and will represent the least modification possible of the regulation in issue.

(R.R. at 81a-82a) (emphasis added).

In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998), our Supreme Court set forth a relaxed standard for establishing unnecessary hardship where an applicant seeks a dimensional variance. The court explained that an applicant seeking a dimensional variance:

is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id.* at 47. Hence, the court held that "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 48. Further, the court held that:

To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring

the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

*Id.* at 50.

Nevertheless, this Court has stated that while *Hertzberg* eased the requirements for a dimensional variance, "it did not remove them," and that an applicant "must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tri-County Landfill v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 520 (Pa. Cmwlth.), *appeal denied*, 101 A.3d 788 (Pa. 2014). Indeed, we have consistently held that, even under this relaxed standard, an applicant is not entitled to a dimensional variance where no hardship is shown or where the hardship alleged amounts to an applicant's mere desire to increase profitability. *See*, *e.g.*, *McCarry v. Haverford Township Zoning Hearing Board*, 113 A.3d 381 (Pa. Cmwlth. 2015); *Society Hill Civic Association v. Philadelphia Zoning Board of Adjustment*, 42 A.3d 1178 (Pa. Cmwlth. 2012); *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144 (Pa. Cmwlth. 2011).

Landowner only sought a variance relating to the side-yard setback requirement. Landowner's son was the only witness to testify in support of his mother's request for a variance. His testimony neither addresses nor supports the need for encroachment into the setback by five feet. He testified that his mother wanted to "put in a two story addition onto the existing house there with the garage on the first floor and second floor to be two bedrooms," but that "the pad is 22 x 25 . . . we need the variance for the space in between because right now there is only 4 foot 6 from foundation to foundation." (R.R. at 6a-7a.)

While his testimony referenced some variations in distances between the front and rear of the concrete pad and the property line shared with Objectors

and a slope in the rear of the property, this testimony was confusing and did not describe the lot size or shape or any other unique physical circumstances or conditions relative to the property, let alone any purported unnecessary hardship resulting therefrom.

Instead, he merely stated that "[o]n the concrete pad there on the one end the back corner of it, my mother's property there goes 3 foot from the property line over. It's actually 3 foot 4 inches. And it goes up further it's 2 foot 3 inches." (R.R. at 7a.) Upon questioning by members of the Board, he noted that the property "slopes down" in the back and that the property line was "not like a straight line." (R.R. at 10a, 12a.) He described the pad as being "2 foot 3 off the front of [the property line] and 3 foot 4 off the back. But again, there's 4 foot 6 in between." (R.R. at 12a.) Later, he stated that "[t]he very back of where that pad is, it's only like 14 inches off the property line. And in the front they have about 2 foot 3." (R.R. at 13a.)

All of his testimony, except for noting that the property "slopes down" in the back, relates to the current measurement of encroachment by the existing concrete pad. However, the pad itself and the desire to build upon the entire pad is separate from the need to build or any purported hardship experienced by not building an addition onto a home which will encroach into the required setback by nearly five feet.

Additionally, he offered no testimony regarding the inability to develop the property in strict conformity with the Ordinance, the need for a variance to enable the reasonable use of the property, or the lack of any impairment to the use or development of adjacent property. In this regard, I note that while Landowner sought to construct the addition with a two-car garage on the footprint of the existing concrete pad, she offered no testimony why a smaller,

PAM - 9

dimensionally-conforming addition could not be built. Indeed, Landowner's application to the Board, as well as her son's testimony, described the concrete pad as being twenty-two feet wide.

In sum, Landowner sought a dimensional variance from the Board relating to the side-yard setback requirement of the Borough's Ordinance, but failed to present sufficient evidence establishing the necessary criteria for a variance under Section 8.210(a) of the Ordinance, including unnecessary hardship, which standard is relaxed but still required for a dimensional variance. The Board erred in granting Landowner a variance.

The Board also erred in alternatively concluding that Landowner was entitled to construct the addition as a vertical expansion of a non-conforming use. The prior, non-conforming use was the store, which was demolished in 1999. This demolition, coupled with Landowner's desire to construct an addition that constituted a new, conforming use, constituted an abandonment of the prior, non-conforming use. Hence, such use could not be continued or expanded under the Ordinance.

Accordingly, I would reverse the trial court's order.

_____
PATRICIA A. McCULLOUGH, Judge