CHATEAU WOODS, INC., Appellant,

v.

**LOWER PAXTON TOWNSHIP and
Lower Paxton Township
Authority.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 23, 2001.
Decided April 20, 2001.

Leslie D. Jacobson, Harrisburg, for appellant.

Steven A. Stine, Hershey, for appellees.

Before McGINLEY, Judge, LEADBETTER, Judge and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Chateau Woods, Inc. (CWI) appeals from the July 27, 2000 order of the Court of Common Pleas of Dauphin County (trial court) that denied its post-trial motions filed after the trial court entered judgment in favor of Lower Paxton Township and the Lower Paxton Township Authority (collectively, Township). We affirm.

The facts of this case are summarized as follows: CWI is a residential development corporation seeking to construct condominiums in the Township. The location of the proposed condominiums is situated in the Paxton Creek drainage basin, which is served for sanitary purposes by the Paxton Creek Interceptor. In its planning module [1] submitted to the Department of Environmental Protection (DEP), CWI requested authorization for forty-four equivalent dwelling units (EDUs).[2]

Before CWI submitted its planning module to the DEP, another entity, Gateway Center (Gateway), reduced its planning module sewer capacity by forty-four EDUs. The Township had previously authorized sewer connections for Gateway's project.

John Boland, a shareholder in CWI, acquired forty-four EDUs from Gateway's planning module. Mr. Boland then sold the forty-four EDUs to CWI. Thereafter, CWI applied to the Township for building permits,[3] which the Township denied on the basis of the DEP's prohibition restricting new connections to the sewer system to four connections per month.

---

1. Planning modules are designs proposed by the developer to indicate the specifics of the planned development, including, *inter alia,* the means of sewage disposal. A planning module is first submitted to the municipality and then to the DEP. The DEP reviews the planning module to ensure that it meets the DEP's regulations and the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§ 750.1–750.20a. (Trial court transcript "Transcript," p. 42)

2. An EDU represents the flow of wastewater converging into the sewer system. (*Id.,* pgs. 16–17) For example, if the Township uses 200 gallons per day as the equivalent of one EDU and a proposed McDonald's would generate 600 gallons of wastewater per day, the McDonald's would contribute three EDUs of flow into the sewer system. (*Id.,* p. 18,) There was no testimony establishing the Township's EDU equivalent.

3. Bill Weaver, Director of the Sewer Department for the Township, testified that building and sewer permits are typically issued at the same time. Exceptions would include the building of a structure that does not require sewer service, *e.g.* a garage or a model home. (*Id.,* p. 61)

In its complaint in mandamus and request for injunctive relief, CWI alleged that it had a vested right in the building permits (allowing for sewer connections) because the Township had previously approved Gateway's planning module sewer capacity and Gateway had transferred forty-four EDUs to CWI. CWI requested that the trial court issue an order directing the Township to issue forty-four building permits to CWI and enjoining it from refusing to issue said permits.

The trial court held a hearing on January 4, 2000 and considered whether CWI acquired the sewer connection permits from Gateway through Mr. Boland when it purchased Gateway's EDUs. Testimony established that during the proceedings, forty-four sewer connections were available to CWI; however, CWI refused to pay the Township the fees associated therewith. CWI claimed that since Gateway had paid the Township for the permits and Mr. Boland had compensated Gateway for its EDUs, CWI was not required to pay for permits that were already obtained by Gateway. Further testimony established that while the DEP must authorize the flow of sewage into the system, the local municipality issues the permits to connect to the system.

The trial court examined Section 94.21 of the DEP's regulations, which sets forth the procedure to be followed when an overload of the sewer system occurs, and concluded that it barred the transfer of permits from one landowner to another during a connection-prohibition period. 25 Pa.Code § 94.21. The trial court further rejected CWI's argument that it was not required to pay connection fees to the Township because Gateway had already done so. The trial court noted that CWI failed to present any evidence establishing that it was entitled to the connection permits by virtue of acquiring Gateway's EDUs.

On review, CWI claims that the trial court erred in concluding that it did not acquire forty-four sewer connection permits when it purchased the EDUs from Gateway via Mr. Boland. In a mandamus action, our review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether there is sufficient evidence to support the trial court's findings. *J.J.D. Urethane Co. v. Montgomery County*, 694 A.2d 368 (Pa.Cmwlth.1997). In reviewing an order granting or denying an injunction, we will disturb the trial court's determination only if the trial court committed an error of law or abused its discretion. *Carlini v. Highmark*, 756 A.2d 1182 (Pa.Cmwlth.2000).

CWI first contends that the trial court improperly disregarded Mr. Boland's uncontested testimony that he obtained the connection permits from Gateway. Our legal research has failed to discover any case law involving the issue of whether a party can acquire sewer connection permits via a transfer of EDUs. Nonetheless, we conclude that Mr. Boland's understanding as to what he acquired in the Gateway transfer does not establish that the transfer of connection permits was legal. To reiterate, regardless of the fact that the DEP authorizes the flow of sewage into the system, the Township issues the permits authorizing connection to the sewer system.

In its second contention, CWI maintains that it had the right to rely on the prior permits issued to Gateway when it transferred its EDUs to CWI. CWI relies on the testimony of Hugh V. Archer, Ph.D., past Deputy Secretary for Water Management for the DEP, to support its position that the Gateway connection permits were transferable because they were originally

issued as "open permits" (the permits did not limit the EDU flow).

■ At best, our review of Dr. Archer's testimony reveals that in his opinion, a developer could easily *assume* that the connection permits were transferred with the EDUs. Yet again, there is no legal authority to support the conclusion that sewer connections, which are issued by the Township, can be transferred from one entity to another by virtue of the transfer of EDUs, which are authorized by the DEP.

Conversely, Leon Oberdick, program manager for the DEP, testified that the DEP is not in the business of issuing permits for connection into the sewer system and that in his opinion, the transfer of connection permits would not be part of the approval process of a planning module. Additionally, Mr. Weaver, testifying on behalf of the Township, stated that Resolution 99–09, which essentially approved the CWI planning module, contained a disclaimer that "[t]he approval of a planning module by the Board of Supervisors does not obligate the [T]ownship to provide building permits and/or sanitary sewer connection permits. The availability of such permits may be limited by DEP and/or the owners of the downstream sewer system." (Transcript, p. 58)

Without legal authority to the contrary, the trial court was thus free to conclude that the transfer of EDUs from Gateway to CWI did not confer upon CWI the right to Gateway Center's sewer connection permits. Therefore, CWI's right to relief was not clear.

■ In its third contention, CWI maintains that the trial court erred in relying on Section 94.21 of the DEP's regulations. That Section prohibits new connections to the overloaded sewer facilities except as approved by the municipality under the standards for granting exceptions found in 25 Pa.Code §§ 94.55 94.57 (relating to building permits issued prior to ban, replacement of a discharge and other exceptions). CWI charges that since the Township was only limited to four new connections per month, Section 94.21 is inapplicable to the instant case because there was no ban or prohibition on connections, but only a limitation on the number of permits issued per month.

Whether the Township's ability to issue new connections was restricted by a ban, a prohibition or a limitation on the number of permits is not germane. All the evidence submitted demonstrated that the Township's authority to issue permits was restricted by the DEP. The Township's failure to abide by the DEP's limitations would have subjected the Township to a ban on all connections, fines and/or penalties, or approval of fewer connections in the future. (*Id.*, p. 45) In essence, CWI's argument attempts to collaterally attack the DEP's authority to issue a limitation, as opposed to a ban or prohibition, on the number of new connections.

Moreover, CWI concedes in its brief that Section 94.21 of the DEP's regulations applies to connection bans and prohibitions. (CWI's brief, p. 6) The term "prohibition" is defined as "[a] restriction placed by a permittee on additional connections to an overloaded sewer system or a sewer system tributary to an overloaded plant." 25 Pa.Code § 94.1. The testimony established that the DEP restricted the Township's ability to authorize new connections to four per month. Thus, contrary to CWI's assertion, there was a prohibition in effect by virtue of the Township's compliance with the DEP's directive. CWI did not fall within any of the exceptions found in Sections 94.55–94.57 of the regulations.

■ In its fourth and final argument, CWI claims that it had a vested right in

the permits by virtue of the EDU transfers from Gateway to CWI. Although CWI correctly states the burden of proof, the vested rights doctrine is inapplicable to the instant case.

The vested rights doctrine permits a landowner to use his property without obtaining a variance. *Hitz v. Zoning Hearing Bd. of S. Annville Twp.*, 734 A.2d 60 (Pa.Cmwlth.1999), *appeal denied*, 562 Pa. 676, 753 A.2d 821 (2000). However, the doctrine only applies to those cases where the applicant, in good faith, relies upon a permit issued in error and incurs significant non-recoverable costs. *Id.* Presently, CWI's assertion that it is entitled to the connection permits does not involve permits that were issued in *error.* There is no evidence suggesting that the

Township erroneously issued the connection permits to Gateway.[4]

Based upon the foregoing, we conclude that the trial court did not err in entering judgment on behalf of the Township. Accordingly, we affirm.

### ORDER

AND NOW, this 20th day of April, 2001, it is hereby ordered that the July 27, 2000 order of the Court of Common Pleas of Dauphin County is AFFIRMED.

4.  Moreover, our research has failed to uncover any cases where a third party to whom the permits were not originally issued successfully argued the vested rights doctrine.