# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 347 C.D. 2021 |
| | : | SUBMITTED: March 7, 2022 |
| Zoning Board of Adjustment, | : | |
| and Gabriel Salas | : | |
| | : | |
| Appeal of: Gabriel Salas | : | |

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                      HONORABLE CHRISTINE FIZZANO CANNON, Judge
                      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                              **FILED:  March 29, 2022**

Applicant, Gabriel Salas, appeals from an order of the Court of Common Pleas of Philadelphia County reversing the decision of the City of Philadelphia's Zoning Board of Adjustment, which granted Applicant's request on reconsideration for permission to use the existing property located at 1201 Fanshawe Street, Philadelphia, Pennsylvania, as a multi-family dwelling consisting of three units.  We affirm.

The relevant background is as follows.  The subject property is located in an RSA-5 Residential (residential single-family attached-5) zoning district.  Built in 1946, the property was constructed as a duplex.[1]  (Sept. 11, 2019 Hearing, Applicant's Ex. 4, Zoning Archive; Reproduced Record "R.R." at 39a.)  When

---

[1] The units on Fanshawe Street were constructed primarily as single-family homes, with duplexes on the four corners.  (Dec. 21, 2020 Board Decision, Finding of Fact "F.F." No. 44.)

Applicant purchased the property in 2009, there were four units and each one was occupied with existing tenants. (Dec. 21, 2020 Decision, Conclusion of Law "C.L." No. 8.) However, the prior owner never obtained permits for those units. (*Id.*, Finding of Fact "F.F." Nos. 17, 20, and 25.)

On April 13, 2018, the City's Department of Licenses and Inspections (L&I) issued a notice of violation to Applicant for multiple violations. Pertinent here, it cited him with failure to have a permit to use the property as a four-family dwelling. (F.F. No. 1.) The two problematic units were located in the basement.[2] (F.F. No. 2.) A few days later, Applicant applied to legalize use of the property as it then existed as a multi-family dwelling consisting of four units. (*Id.*) On April 30, 2018, L&I issued a notice of refusal stating that the proposed use was prohibited in the RSA-5 zoning district under Section 14-602-1 of the Philadelphia Zoning Code (Zoning Code).[3] (F.F. No. 3.) In June, 2018, after L&I had him remove the stoves from the basement, Applicant procured a rental license for the two upstairs units.[4] (Sept. 11, 2019 Hearing, Notes of Testimony "N.T." at 24; R.R. at 97a. and F.F. No. 28.)

In January 2019, Applicant's counsel applied for permission to use the property as a four-unit dwelling as it then existed. L&I refused the application. (F.F. No. 4.) On appeal to the Board, counsel averred that Applicant "'only [sought] to legalize the existing use at the property'" which had been "'purchased as a multi-family dwelling and [had] a long history of multi-family use.'" (F.F. No. 6.)

---

[2] The proposed two basement units were each less than 400 square feet. (Sept. 11, 2019 Hearing, Notes of Testimony "N.T." at 17; Reproduced Record "R.R." at 90a.)

[3] Zoning Code § 14-602-1.

[4] (Sept. 11, 2019 Hearing, N.T. at 23; R.R. at 96a) and (Sept. 9, 2019 Ltr. from Ward Leader Janice Sulman, Esq., at 1; R.R. at 68a).

Following a September 11, 2019 hearing at which counsel averred that there was a legal duplex on the property, the Board voted two-to-one to deny the application for four units. (F.F. Nos. 7 and 15.) Because the Board's Rules and Regulations provide that the Board shall take no action unless at least three members present at the time of the vote concur, the vote did not constitute a final determination.[5] (F.F. No. 8.)

On September 24, 2019, Applicant's counsel submitted a request for reconsideration "'asking for approval of a compromise proposal for three total units.'" (F.F. No. 9.) The Board opined that counsel presumably and erroneously believed that the September 11 vote constituted a final determination. (*Id*.) Section 6.3.1 of the Board's Rules and Regulations provides:

> A request for reconsideration of a final determination by the Zoning Board may be permitted by majority vote of the Zoning Board under special circumstances that were not known, and could not reasonably have been known, by the requestor at the time of the hearing. The date on which a decision of the Zoning Board is mailed shall be conclusively presumed to be the date of final determination, and the time for a reconsideration request shall run from that date.

Board's Rules and Regulations, § 6.3.1.

Acting on the original application for four units, the Board voted four-to-one to deny the application on December 4, 2019.[6] (F.F. No. 10.) Subsequently, Applicant's counsel submitted a December 23, 2019 addendum to the initial reconsideration request stating that the compromise proposal for three units

---

[5] Board's Rules and Regulations, § 6.2.2.

[6] The Board's Vice Chair, Carol Tinari, was absent from the September 11, 2019 hearing. After certifying that she had read the transcript and reviewed the record, Tinari voted in accordance with Section 6.2.3 of the Board's Rules and Regulations. (F.F. No. 10.)

constituted new evidence because Applicant did not make that proposal at the September 2019 hearing.  (F.F. No. 11.)  Councilwoman Cherelle Parker opposed the request, citing the absence of special circumstances.  (F.F. No. 12.)  Nonetheless, the Board voted four-to-zero to grant reconsideration and a rehearing.  (F.F. No. 13.)

Following a March 2020 rehearing, the Board voted three-to-two to grant the variance with a proviso limiting the number of units to a maximum of three and requiring a certificate of occupancy within nine months.  (F.F. No. 14.)  The appeal to the trial court of the City and Parker followed.  Without taking additional evidence, the trial court reversed.  Applicant's appeal to this Court followed.

Applicant makes four arguments on appeal:  1) that there was ample evidence to sustain the Board's conclusion that Applicant was entitled to a variance; 2) that Applicant was entitled to relief based on the doctrine of expansion of a nonconforming use; 3) that the trial court erred in holding that the Board improperly granted reconsideration; and 4) that the trial court erred in holding that the Board lacked authority to grant a lesser variance than was requested in the original application (three units rather than four). Because we find resolution of the first two arguments to be dispositive, we will not address the third and fourth arguments.

Pursuant to the Zoning Code:

> The . . . Board shall grant a variance only if it finds each of the following criteria are satisfied:
>
> > (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Zoning Code] § 14-303(8)(e)(.2) (Use Variances) below, . . . have been satisfied;
>
> > (.b) The variance, . . . if authorized will represent the minimum variance that will afford relief and

4

will represent the least modification possible of the use . . . regulation in issue;

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)(.1)(.a)-(.h).

With regard to use variances, the Zoning Code provides:

To find an unnecessary hardship . . . the . . . Board must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional

5

topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

*Id.*, § 14-303(8)(e)(.2)(.a)-(.d).

In the present case the Board, in granting the variance with the proviso that it be limited to a maximum of three units, considered the following factors:

8. The [p]roperty was an existing, fully rented four[-]family dwelling at the time Applicant purchased it. Applicant testified to the difficulty of returning it to the two[-]family use for which it was previously approved.

9. The Board concludes this is sufficient to establish the hardship required for grant of a variance.

10. The Board additionally concludes the existing hardship was not self-imposed, the variances requested are the minimum necessary to afford relief, and the development will not detrimentally impact the public health, safety or welfare.

6

11. With respect to the "least minimum" requirement, the Board notes that Applicant, on reconsideration, reduced the proposal to include a maximum of three residential units.

12. The Board finally concludes the proposed development will not negatively impact the public health, safety or welfare.

(C.L. Nos. 8-12.)

As a matter of law, the evidence taken in the light most favorable to Applicant does not establish the requisite unnecessary hardship. Applicant testified that it would take time and cost approximately $50,000 to $60,000 to convert the property back to a duplex. (Sept. 11, 2019 Hearing, N.T. at 10-11; R.R. at 83a-84a.) Although economic hardship can be a factor in ascertaining whether an unnecessary hardship exists, economic hardship in and of itself will not justify the grant of a variance. *Marshall v. City of Phila.*, 97 A.3d 323, 330-31 (Pa. 2014). Moreover, after L&I came out and cited the property and Applicant removed the basement stoves, he was given a rental license for two units. (F.F. No. 28.) Applicant's argument that it would cost $50,000 to $60,000 to convert the property back to a duplex is misleading. The two duplex units can be used as they presently exist and represent a viable use of the property. The high expense described by Applicant would be needed only to get access to the basement units from the interior of the duplex units. (Sept. 11, 2019 Hearing, N.T. at 24; R.R. at 97a.) Clearly, if the basement units were used as additional living quarters as Applicant proposes, Applicant would rent the duplex units in their present condition, so interior access to the basement is not needed to make the duplex units livable or rentable. The basement units with exterior access could be used as storage, either by the duplex tenants or by Applicant, or perhaps could be converted to garages at far less cost

7

than the interior access proposal. At all events, even if the basement areas were not used at all, Applicant has a viable use of his property as a residential rental property. While renting the duplex units with interior access to the basement area might well be more desirable and therefore profitable, "where the asserted hardship amounts to a landowner's mere desire to increase profitability, the unnecessary hardship criterion . . . is not satisfied . . . ." *Dunn v. Middletown Twp. Zoning Hearing Bd.*, 143 A.3d 494, 506 (Pa. Cmwlth. 2016).

In addition, we agree that any hardship is self-imposed. Applicant neither asked the prior owner whether the then existing four units complied with the law nor ascertained the zoning status of the property as to how many units were allowed. (Sept. 11, 2019 Hearing, N.T. at 10; R.R. at 83a.) A purchaser has the burden to check the zoning status of real estate and his failure to do so and ignorance therefrom "cannot support the issuance of a variance on an estoppel theory." *Appletree Land Dev. v. Zoning Hearing Bd. of York Twp.*, 834 A.2d 1214, 1217-18 (Pa. Cmwlth. 2003) (citation omitted). This burden is especially relevant when a purchaser intends to make a profit from renting a property. *See Hasage v. Phila. Zoning Bd. of Adjustment*, 202 A.2d 61, 64 (Pa. 1964) (where owners purchased a building with illegally converted apartments under the belief that a multi-family use was allowed, court held that they had a duty to ascertain the property's zoning status) and *Camaron Apartments, Inc. v. Zoning Bd. of Adjustment*, 324 A.2d 805, 807 (Pa. Cmwlth. 1974) (where prior owner received variance for forty apartments but built forty-two, court rejected new owner's claim of ignorance and held that hardship was self-inflicted because corporation should have investigated at the time of purchase).

Finally, to the extent that Applicant seeks to rely on the law permitting expansion of a preexisting nonconforming use, his position is without merit.

8

Notwithstanding the fact that Applicant's counsel raised the issue at both hearings, Applicant did not seek expansion of an existing nonconformity in either his initial application or his request on reconsideration. At any rate, a municipality has the right to impose reasonable restrictions on a natural expansion of a preexisting nonconforming use, (*West Central Germantown Neighbors v. Zoning Board of Adjustment of City of Philadelphia*, 827 A.2d 1283 [Pa. Cmwlth. 2003]), and the City has done so here. Even though L&I did not calculate, and the Board made no findings regarding an expansion of a nonconforming use, Applicant conceded that his proposed expansion exceeded the 10% threshold for a by-right expansion found in Section 14-305(5)(a)(.2) of the Zoning Code. (Mar. 11, 2020 Hearing, N.T. at 6-7; R.R. at 136a-37a). Because the proposed expansion conflicted with the restrictions in the Zoning Code, Applicant would still require a variance for the proposed expansion. *W. Cent. Germantown Neighbors*, 827 A.2d at 1287. For the reasons cited above, Applicant simply did not meet the criteria necessary for issuance of a variance.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

Judge Dumas did not participate in the decision for this case.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia           :
                                      :

        v.                        :     No. 347 C.D. 2021
                                        :

Zoning Board of Adjustment,    :
and Gabriel Salas               :
                                      :

Appeal of: Gabriel Salas      :

# **O R D E R**

AND NOW, this 29th day of March, 2022, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita