IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Jose Crisostomo : 
                                      :
From a Decision of:               :
Zoning Board of Adjustment     :   No. 627 C.D. 2022
                                        :
Appeal of: Jose Crisostomo     :   Submitted: July 14, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                               FILED: September 21, 2023

Appellant Jose Crisostomo (Crisostomo) appeals the Court of Common Pleas of Philadelphia County's (Common Pleas) May 12, 2022 order, through which Common Pleas affirmed Appellee Zoning Board of Adjustment's (Board) June 30, 2021 Findings of Fact and Conclusions of Law (Decision) regarding Crisostomo's application for a use variance. We affirm.

## I. Background

This appeal pertains to a property located at 4356 Josephine Street in Philadelphia, Pennsylvania (Property). The Property was previously zoned CMX-2 (*i.e.*, commercial mixed-use), but was rezoned as RSA-5 (*i.e.*, residential) in 2014. Reproduced Record (R.R.) at 155-56.[1] On March 12, 2020, Crisostomo purchased

---

[1] Crisostomo has failed to comply with the Pennsylvania Rules of Appellate Procedure's technical requirements regarding how a reproduced record's pages must be numbered. *See* Pa. R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures[,] . . . thus 1, 2, 3, etc., followed . . . by a small a, thus 1a, 2a, 3a, etc."). For simplicity's sake, however, we will nevertheless cite to the Reproduced Record by using the page designations provided by Crisostomo.

the Property from Daniel Gorberg, its then-owner. *Id.* at 57-62. Crisostomo then applied for permission to use the first floor of the Property as a store/professional office[2] and the second floor as a single-family residential unit. *Id.* at 40. On June 1, 2020, the City of Philadelphia's (City) Department of Licenses and Inspections (L&I) denied Crisostomo's request for two reasons: first, the City's Zoning Code[3] barred the Property from having more than one principal use; and second, the proposed commercial uses of the Property were prohibited under the Zoning Code. *Id.* at 40-41.

Crisostomo subsequently appealed this denial to the Board and, in doing so, sought a use variance that would allow him to use the Property's first floor for commercial purposes. *See id.* at 186-88. Thereafter, on June 30, 2021, the Board held a public hearing regarding Crisostomo's appeal. At the outset of the hearing, Crisostomo's counsel asserted that, though the Property had "been vacant for quite some time," it had never been used exclusively as a single-family home; rather, he maintained that the Property's first floor had historically housed commercial uses dating as far back as the 1960s. *See id.* at 142-44. In light of this, as well as the local community's purported support of the Property's proposed redevelopment, Crisostomo's counsel argued that his client was entitled to a use variance.[4] *See id.* Next, Sloan Folks, a representative of then-Councilwoman Maria Quiñones

---

[2] Crisostomo specifically stated that he wished to sell prepaid phones and phone cards, as well as to provide money transfer and utility bill payment services. R.R. at 40.

[3] Zoning Code, Philadelphia County, Pa., *as amended* (2012).

[4] Crisostomo adopted his counsel's statements as his own. R.R. at 144-45.

Sánchez,[5] informed the Board that the local registered community organization known as the Frankford Neighborhood Advisory Committee (RCO) opposed Crisostomo's request for a use variance, and that the Councilwoman agreed with the RCO's position and urged the Board not to grant Crisostomo his desired relief. *Id.* at 146-49. Finally, Ian Hegarty, from the City's Planning Commission, testified regarding the Property's rezoning in 2014, and stated that the Planning Commission opposed the requested use variance, in large part because "[t]he last [document showing a] commercial use of this [P]roperty was issued in 1966, . . . so [the Planning Commission does not] believe that conditions exist that would prevent [it] from continuing to be used as a residential building." *Id.* at 155-56. The Board then voted unanimously to deny Crisostomo's sought-after use variance. *Id.* at 156.[6]

Crisostomo appealed this denial to Common Pleas, which considered no additional evidence and, on May 12, 2022, affirmed the Board's denial, in full. This appeal to our Court followed shortly thereafter.

## II. Discussion

We summarize Crisostomo's appellate arguments as follows.[7] First, the Board abused its discretion by denying his variance request, because that denial imposed a

---

[5] The Property is located in then-Councilwoman Quiñones Sánchez's councilmanic district. *See* R.R. at 146-49.

[6] The Board formally denied Crisostomo's appeal on June 30, 2021, but did not issue the formal decision through which it explained its reasoning until February 11, 2022. *See* Decision at 1; Common Pleas Op., 9/22/22, at 2 n.1.

[7] "Under our standard of review, when, as here, the trial court did not take any additional evidence, an appellate court is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014). A zoning board abuses its discretion when it issues factual findings that are not supported by substantial evidence. *DiMattio v. Millcreek Twp. Zoning Hearing Bd.*, 147 A.3d **(Footnote continued on next page…)**

"particular and unique" unnecessary hardship upon him by preventing the Property from being used for commercial purposes. Additionally, the proposed use would not be injurious to public health, safety, and welfare, and would constitute the minimum relief necessary to permit development of the Property. Crisostomo's Br. at 19-26. Crisostomo next asserts that the Board abused its discretion because the record evidence establishes that commercial activity was a valid, nonconforming use of the Property's first floor that was never abandoned. *Id.* at 27-30. Finally, Crisostomo argues that he is entitled to equitable relief, in the form of a variance by estoppel, because he reasonably relied on both public records and the lack of any prior citations for zoning infractions to inform his conclusion that the Property's first floor could be lawfully used for commercial purposes. *Id.* at 30-32.

Crisostomo's first argument is baseless. Generally speaking, it is well settled that

> [t]he party applying for a variance bears the burden of proof. It is the function of the zoning board to determine whether the evidence satisfies the criteria for granting a variance. The zoning board, as factfinder, is the sole judge of credibility. More specifically, a zoning board determines the credibility of witnesses and weighs their testimony, resolves conflicts in testimony, and, in doing so, may accept or reject the testimony of any witness in part or *in toto*. In making these determinations, a zoning board is free to reject even uncontradicted testimony, including expert testimony, it finds lacking in credibility.

---

969, 974 (Pa. Cmwlth. 2016). Substantial evidence constitutes "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Borough of Fleetwood v. Zoning Hearing Bd. of Borough of Fleetwood*, 649 A.2d 651, 653 (Pa. 1994).

4

*Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 506 (Pa. 2021) (internal citations omitted). The Zoning Code[8] circumscribes the Board's power in this realm, mandating that

> [t]he . . . Board shall grant a variance only if it finds each of the following criteria are satisfied:
>
> > (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Zoning Code] § 14-303(8)(e)(.2) (Use Variances) . . . , in the case of use variances, or the criteria set forth in [Zoning Code] § 14-303(8)(e)(.3) (Dimensional Variances) . . . , in the case of dimensional variances, have been satisfied;
> >
> > (.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;
> >
> > (.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;
> >
> > (.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;
> >
> > (.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;
> >
> > (.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;
> >
> > (.g) The grant of the variance will not adversely and substantially affect the implementation of any

---

[8] As the Property is located in Philadelphia, the Zoning Code controls the question of whether the Board should have granted the use variance in question. *See Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1067 (Pa. 2007).

adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)(.1)(.a)-(.h). As for use variances specifically, the

Zoning Code provides the following, additional guidance:

> To find an unnecessary hardship in the case of a use variance, the . . . Board must make all of the following findings:
>
>> (.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;
>>
>> (.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;
>>
>> (.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and
>>
>> (.d) That the hardship cannot be cured by the grant of a dimensional variance.

*Id.*, § 14-303(8)(e)(.2)(.a)-(.d).

In this instance, the Board ruled that Crisostomo was not entitled to his desired use variance, primarily because he had failed to prove that an unnecessary hardship existed that would prevent him from using the Property in a Zoning Code-compliant manner. Specifically, the Board found, in relevant part:

> 4. At the zoning hearing, [Crisostomo's counsel] said the Property "is in fact a commercial property on the first floor . . . [but] because it's been vacant for quite some time, the Property itself is now zoned RSA-5." 6/30/21 [Notes of Testimony (N.T.)] at 3.
>
> 5. With regard to the Property's history of commercial use, [Crisostomo's counsel] said "first it was a vacant store front with one family, then there was a barber shop with one family. This is 1962." He also noted that there is "an [Americans with Disabilities Act of 1990[9] (ADA)-]compliant ramp to the first floor and there's never been a permit pulled for a single family dwelling." 6/30/21 N.T. at 4.
>
> 6. [Crisostomo's counsel] said "we have a Property that is . . . set up for commercial use, and we simply want to utilize the first floor for that commercial use." 6/30/21 N.T. at 4.
>
> 7. The Board received a letter dated September 24, 2020, from the [RCO] opposing the variance request because "longtime residents say that it has always been a residential property" and "there is not enough parking in the area to handle additional traffic of cars." *See* Letter from Frankford NAC dated 9/24/20.
>
> . . . .
>
> 13. Ian . . . Hegarty, representing the Planning Commission, said the Property had been changed from CMX[-]2 to RSA-5 in 2014 and noted that "the last [document showing a] commercial use of this property was issued in 1966." 6/30/21 N.T. at 16.
>
> 14. Mr. Hegarty said the [Planning] Commission did not believe "that conditions exist that would prevent this

[9] 42 U.S.C. §§ 12101-12213.

building from continuing to be used as a residential building" and recommended denial of the variance. 6/30/21 N.T. at 16-17.

Decision, Findings of Fact (F.F.), ¶¶4-7, 13-14. Based upon these findings, the Board concluded, in relevant part:

10. [Crisostomo] did not identify any unique physical conditions of the Property that would preclude its use as a single-family home.

11. [Crisostomo's] hardship argument was based solely on [his counsel's] contention that the Property's first floor was historically approved for commercial use. The last zoning permit for non-residential use was, however, issued more than fifty years ago and [his counsel] did not identify or offer evidence as to when the first floor was last used for a commercial purpose.

12. The [P]roperty is a two-story, end of row structure that, except for an ADA[-compliant] ramp to the first floor entrance, does not include features generally associated with commercial use. There is no storefront or signage and interior photos do not show anything incompatible with residential use. With regard to the ADA ramp, [Crisostomo's counsel] said "[t]here's not too many ADA ramps in single[-]family homes." He did not, however, provide evidence of when or why the ramp was built, or why it could not have been intended to provide access to a disabled resident of a single[-]family home.

. . . .

14. [Crisostomo] also did not present evidence showing that converting the Property to single[-]family use (even assuming it was not last used as a single[-]family home) would be infeasible or prohibitively expensive.

*Id.*, Conclusions of Law (C.L.), ¶¶10-12, 14. Each of these findings and conclusions is supported by the record. As such, we can find no fault with the Board's

determination that Crisostomo failed to meet his burden regarding unnecessary hardship.[10]

Crisostomo's second argument is no more persuasive than his first and appears to be premised upon his misapprehension of the difference between a use variance and a valid nonconforming use. The former "involves a request to use property in a manner that is wholly outside zoning regulations." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014). By contrast, the latter "is any activity or structure which came into existence prior to the [z]oning restriction involved, but which now violates that restriction." *Haverford Twp. v. Spica*, 328 A.2d 878, 881 (Pa. Cmwlth. 1974) (quoting Robert Ryan, Pennsylvania Zoning Law and Practice, § 7.1.1 (1970)). A valid nonconforming use consequently enables the parcel's owner to "enjoy[] a vested property right thereto which may not be abrogated, unless it is a nuisance, or abandoned, or is extinguished by eminent domain." *Gross v. Zoning Bd. of Adjustment of City of Phila.*, 227 A.2d 824, 827 (Pa. 1967). In other words, a property owner does not need a use variance in order to operate a valid nonconforming use, nor does the existence of such a nonconforming use, in itself, provide a basis for granting a use variance.[11]

---

[10] Due to Crisostomo's failure to establish the existence of unnecessary hardship, we need not address his assertions that the use variance would be compatible with public health, safety, and welfare, and that the desired variance would provide the minimum relief necessary to develop the Property.

[11] As we explained in *Spica*,

> [t]here are four ways a property owner can secure relief from zoning restrictions (short of challenging the validity of the ordinance itself). He can request a special exception; he can ask for a variance; he can establish a valid nonconforming use; or he can attempt to establish what has been termed a 'vested right' to violate the restriction.

328 A.2d at 880. Thus, each of these four options provides a distinct avenue for potential relief.

While not relevant to this matter, it does bear mentioning that

**(Footnote continued on next page…)**

Furthermore, even assuming *arguendo* that Crisostomo had presented a correctly articulated nonconforming use argument to the Board, his argument would have failed on its merits.

> In order to establish a prior nonconforming use the landowner is required to provide objective evidence that the land was devoted to such use at the time the ordinance was enacted. The burden of proving the extent or existence of a nonconforming use rests on the property owner who would claim the benefit of the rights accorded property with that status.

*Heyman v. Zoning Hearing Bd. of Abington Twp.*, 601 A.2d 414, 416 (Pa. Cmwlth. 1991) (internal citations omitted).[12]

---

> the right to expand a non[]conforming use to provide for natural expansion and accommodation of increased trade is a constitutional right protected by the due process clause. While a municipality cannot prohibit, *per se*, the natural expansion of a non[]conforming use, the right of the expansion of a non[]conforming use is not unlimited. The expansion must not be detrimental to the public health, safety or welfare and a municipality is afforded the right to impose reasonable restrictions on such an expansion.
>
> . . . .
>
> Where the owner of a non[]conforming use seeks to expand that use and that expansion conflicts with restrictions in the zoning ordinance, the property owner is required to seek a variance.

*W. Cent. Germantown Neighbors v. Zoning Bd. of Adjustment of City of Phila.*, 827 A.2d 1283, 1286-87 (Pa. Cmwlth. 2003) (internal citations omitted).

[12] Zoning nonconformities are regulated in the City through Section 14-305 of the Zoning Code. *See* Zoning Code § 14-305. Generally speaking,

> (a) A nonconformity may continue following any amendment to this or any prior Zoning Code that creates a condition in which a use, structure, parking area, site improvement, lot, or sign has been made nonconforming.

**(Footnote continued on next page…)**

Advanced as may be the science of interpretation of psychic phenomena, the courts cannot be expected, nor are they equipped, to look into a person's mind to ascertain his thoughts and intentions. Only physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind.

*Cook v. Bensalem Twp. Zoning Bd. of Adjustment*, 196 A.2d 327, 329-30 (Pa. 1963).

Here, Crisostomo's counsel presented the Board with evidence that the Property's first floor had been used for commercial purposes in the 1960s, but offered nothing of more recent vintage and, in fact, admitted that the Property had "been vacant for quite some time[.]" R.R. at 142-44. Furthermore, Ian Hegarty, the Planning Commission's representative, testified that "[t]he last [document showing a] commercial use of this [P]roperty was issued in 1966[.]" *Id.* at 155. There is thus no proof in the record that the Property's first floor was being used for commercial purposes when the Property was rezoned as residential in 2014. As such, Crisostomo's claim regarding the existence of a valid, nonconforming commercial use on the Property simply does not hold water.

---

(b) Any rights conferred on a nonconformity run with the property. They are not affected by changes in tenancy or ownership.

(c) The operation, expansion, and replacement of a nonconformity shall be subject to the limitations in [Section] 14-305 (Nonconformities).

(d) The burden of establishing the prior existence of a nonconformity is on the applicant. When applying for any permit or approval relating to a nonconformity, L&I may require the applicant to submit evidence of a prior permit or other documentation showing that the nonconformity existed before the date on which it became nonconforming.

*Id.* §14-305(4).

Finally, we disagree with Crisostomo's assertion that the Board improperly declined to grant him relief in the form of a variance by estoppel. As we have noted in the past, there are

> three labels assigned in Pennsylvania land use/zoning law to the equitable remedy precluding municipal enforcement of a land use regulation. Our courts have generally labeled the theory under which a municipality is estopped: (1) a "vested right" where the municipality has taken some affirmative action such as the issuance of a permit, *Chateau Woods, Inc. v. Lower Paxton Township*, 772 A.2d 122 (Pa. Cmwlth. 2001); a "variance by estoppel" where there has been municipal inaction amounting to active acquiescence in an illegal use, *Skarvelis v. Zoning Hearing B*[*oard*], 679 A.2d 278 (Pa. Cmwlth. 1996); or, "equitable estoppel" where the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the misrepresentation, *Cicchiello v. Bloomsburg Zoning Hearing Board*, . . . 617 A.2d 835 ([Pa.Cmwlth.] 1992).[5] Estoppel under these theories is an unusual remedy granted only in extraordinary circumstances and the landowner bears the burden of proving his entitlement to relief. *Skarvelis*, 679 A.2d at 281. Except for the characterization of the municipal act that induces reliance, all three theories share common elements of good faith action on the part of the landowner: 1) that he relies to his detriment, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost. *Chateau Woods*, 772 A.2d at 126; *Skarvelis*, 679 A.2d at 281; *Cicchiello*, 617 A.2d at 837.
>
> > [5] To a large extent the different labels impose an analytical rigidity that is not helpful. Municipal action that may underpin estoppel often embodies more than one category[.]

*In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002).

Though Crisostomo did not explicitly state to the Board that he was seeking such relief, Crisostomo's counsel did effectively predicate the argument he offered

to the Board, in part, upon these theories. *See* R.R. at 142-43, 150-51, 154. While the Board did not expressly address these portions of Crisostomo's argument, it did implicitly reject them. It did so by concluding that there was no evidence that the Property's first floor had been used for commercial purposes at any point during the preceding 60 or so years, or that any permits authorizing such use had been issued during that time period. *See* Decision, C.L., ¶¶10-14. We find no fault with this implicit rejection, because the record supports these conclusions and, furthermore, because the *entire* Property was rezoned as residential in 2014, a fact of which Crisostomo is, and was, well aware. *See* R.R. at 142; Crisostomo's Br. at 17-18.

### III. Conclusion

Accordingly, we affirm Common Pleas' May 12, 2022 order.

_____
ELLEN CEISLER, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Jose Crisostomo   :
  :
From a Decision of:   :
Zoning Board of Adjustment   :   No. 627 C.D. 2022
  :
Appeal of: Jose Crisostomo   :

# O R D E R

AND NOW, this 21st day of September, 2023, it is hereby ORDERED that the Court of Common Pleas of Philadelphia County's May 12, 2022 order is AFFIRMED.

_____
ELLEN CEISLER, Judge